E-filing

MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103 (fax)
E-mail: mrlozeau@lozeaulaw.com

**FILED**

APR 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ANDREW L. PACKARD (State Bar No. 168690)
MICHAEL P. LYNES (State Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiffs
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE and
STRAWBERRY CANYON STEWARDSHIP GROUP

ADR

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE, a non-profit
corporation; STRAWBERRY CANYON
STEWARDSHIP GROUP, an
unincorporated association,

Plaintiffs,

vs.

STEVEN CHU, in his official capacity as
Director, Lawrence Berkeley National
Laboratory; LAWRENCE BERKELEY
NATIONAL LABORATORY, a federal
agency,

Defendants.

Case No. **C08-01963** VRW

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

(Federal Water Pollution Control Act,
33 U.S.C. §§ 1251 to 1387)

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE and STRAWBERRY

CANYON STEWARDSHIP GROUP, by and through its counsel, hereby allege:

## I.    INTRODUCTION

1.    This complaint seeks relief for Defendants' discharges of polluted storm water

COMPLAINT

1

1   and non-storm water pollutants from Defendants' facility ("the Facility") into the waters of

2   the United States in violation of the Act and the State of California's "Waste Discharge

3   Requirements (WDRs) For Discharges of Storm Water Associated With Industrial Activities

4   Excluding Construction Activities," State Water Resources Control Board ("State Board")

5   Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ

6   and Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System

7   ("NPDES") Permit No. CAS000001, (hereinafter "the Order" or "Permit"). Defendants'

8   violations of the discharge, treatment technology, monitoring requirements, and other

9   procedural and substantive requirements of the Permit and the Act are ongoing and

10  continuous.

11      2.      The failure on the part of persons and facilities such as Defendants and their

12  facility to comply with storm water requirements is recognized as a significant cause of the

13  continuing decline in water quality of the San Francisco Bay ("Bay") and its tributaries. The

14  general consensus among regulatory agencies and water quality specialists is that storm

15  pollution amounts to a substantial portion of the total pollution entering the aquatic

16  environment each year. With every rainfall event, millions of gallons of polluted rainwater

17  originating from industries within the surrounding area pour into Bay area creeks and the

18  Bay.

19      3.      The continuing decline in water quality in Bay area creeks and the San

20  Francisco Bay is a matter of serious public concern. The Bay and its tributaries are heavily

21  polluted water bodies. The entire Bay and all of its major tributaries, including all urban

22  creeks in the Bay area, have been identified by the State Board, the Regional Board, and

23  EPA as impaired water bodies under Section 303(d) of the Clean Water Act. 33 U.S.C. §

24  1313(d).

25  **II.    JURISDICTION AND VENUE**

26      4.      This is a civil suit brought under the citizen suit enforcement provisions of the

27  Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act" or

28  "the Act"). This Court has subject matter jurisdiction over the parties and the subject matter

COMPLAINT                                                    2

1 of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28

2 U.S.C. § 1331 (an action arising under the laws of the United States). The relief requested is

3 authorized pursuant to 28 U.S.C. §§ 2201-02 (power to issue declaratory relief in case of

4 actual controversy and further necessary relief based on such a declaration) and 33 U.S.C. §§

5 1319(b), 1365(a) (injunctive relief).

6      5.      On or about January 11, 2008, Plaintiffs provided notice of Defendants'

7 violations of the Act, and of its intention to file suit against Defendants, to the Defendants;

8 the Administrator of the United States Environmental Protection Agency ("EPA"); the

9 Administrator of EPA Region IX; the Executive Director of the State Water Resources

10 Control Board ("State Board"); the Attorney General of the United States; and to the

11 Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region

12 ("Regional Board"). A true and correct copy of Plaintiffs' notice letter is attached as Exhibit

13 A, and is incorporated by reference.

14      6.      More than sixty days have passed since notice was served on Defendants and

15 the State and federal agencies. Plaintiffs are informed and believe, and thereupon allege,

16 that neither the EPA nor the State of California has commenced or is diligently prosecuting a

17 court action to redress the violations alleged in this complaint.

18      7.      Venue is proper in the Northern District of California pursuant to Section

19 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located

20 within this judicial district. Pursuant to Local Rule 3-2(c), intradistrict venue is proper in

21 Oakland, California because the sources of the violations are located within Alameda

22 County, California.

23 **III.**   **PARTIES**

24      8.      Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

25 ("CSPA") is a non-profit public benefit corporation organized under the laws of the State of

26 California with its main office in Stockton, California. CSPA has approximately 2,000

27 members who live, recreate and work in and around waters of the State of California,

28 including Strawberry Creek and the San Francisco Bay. CSPA is dedicated to the

COMPLAINT            3

**1** preservation, protection, and defense of the environment, the wildlife and the natural
**2** resources of all waters of California. To further these goals, CSPA actively seeks federal
**3** and state agency implementation of the Act and other laws and, where necessary, directly
**4** initiates enforcement actions on behalf of itself and its members.

**5**     9.     Members of CSPA reside in and around the Bay and enjoy using the Bay for
**6** recreation and other activities. Members of CSPA use and enjoy the waters into which
**7** Defendants have caused, are causing, and will continue to cause, pollutants to be discharged.
**8** Members of CSPA use those areas to fish, sail, boat, kayak, swim, bird watch, view wildlife,
**9** hike, and engage in scientific study including monitoring activities, among other things.
**10** Defendants' discharges of pollutants threaten or impair each of those uses or contribute to
**11** such threats and impairments.

**12**     10.     Plaintiff STRAWBERRY CANYON STEWARDSHIP GROUP ("SCSG") is an
**13** unincorporated association comprised of residents of Berkeley and nearby areas who have
**14** organized themselves to address environmental and cultural threats and impacts in Strawberry
**15** Canyon, including concern for the health and well-being of Strawberry Creek. SCSG's
**16** members use and enjoy Strawberry Creek and the San Francisco Bay to hike, bird watch, view
**17** wildlife, sail, boat, and engage in aesthetic and cultural reflection important to their well-
**18** being and quality of life. Defendants' discharges of pollutants threaten or impair SCSG's
**19** members use and enjoyment of Strawberry Creek and the Bay.

**20**     11.     Thus, the interests of CSPA's and SCSG's members have been, are being, and
**21** will continue to be adversely affected by Defendants' failure to comply with the Clean Water
**22** Act and the Permit. The relief sought herein will redress the harms to Plaintiffs caused by
**23** Defendants' activities.

**24**     12.     Plaintiffs are informed and believe, and thereupon allege, that Defendant
**25** STEVEN CHU is the Director of the Lawrence Berkeley National Laboratory, a U.S.
**26** Department of Energy Laboratory, in Berkeley, California. Mr. Chu's duties include the
**27** oversight of a $521-million budget, management of a workforce of approximately 4,000, and
**28** general management of the Lab including compliance with applicable environmental laws.

COMPLAINT

4

1    13.    Plaintiffs are informed and believe, and thereupon allege, that Defendant The

2    LAWRENCE BERKELEY NATIONAL LABORATORY (hereinafter "LBNL") is a federal

3    national laboratory owned by the US Department of Energy that conducts unclassified

4    research across a wide range of scientific disciplines.

5    **IV.    STATUTORY BACKGROUND**

6    14.    Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any

7    pollutant into waters of the United States, unless such discharge is in compliance with

8    various enumerated sections of the Act.  Among other things, Section 301(a) prohibits

9    discharges not authorized by, or in violation of, the terms of an NPDES permit issued

10    pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

11    15.    Section 402(p) of the Act establishes a framework for regulating municipal and

12    industrial storm water discharges under the NPDES program.  33 U.S.C. § 1342(p).  States

13    with approved NPDES permit programs are authorized by Section 402(p) to regulate

14    industrial storm water discharges through individual permits issued to dischargers or through

15    the issuance of a single, statewide general permit applicable to all industrial storm water

16    dischargers.  33 U.S.C. § 1342(p).

17    16.    Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the

18    U.S. EPA has authorized California's State Board to issue NPDES permits including general

19    NPDES permits in California.

20    17.    The State Board elected to issue a statewide general permit for industrial storm

21    water discharges.  The State Board issued the General Permit on or about November 19,

22    1991, modified the General Permit on or about September 17, 1992, and reissued the

23    General Permit on or about April 17, 1997, pursuant to Section 402(p) of the Clean Water

24    Act, 33 U.S.C. § 1342(p).

25    18.    In order to discharge storm water lawfully in California, industrial dischargers

26    must comply with the terms of the General Permit or have obtained and complied with an

27    individual NPDES permit.  33 U.S.C. § 1311(a).

28    19.    The General Permit contains several prohibitions.  Effluent Limitation B(3) of

COMPLAINT

5

1   the General Permit requires dischargers to reduce or prevent pollutants in their storm water
2   discharges through implementation of the Best Available Technology Economically
3   Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional
4   Pollutant Control Technology ("BCT") for conventional pollutants. BAT and BCT include
5   both nonstructural and structural measures. General Permit, Section A(8). Discharge
6   Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-
7   storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.
8   Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges to
9   any surface or ground water that adversely impact human health or the environment.
10  Receiving Water Limitation C(2) of the General Permit prohibits storm water discharges that
11  cause or contribute to an exceedance of any applicable water quality standards contained in a
12  Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

13      20.     EPA has established Parameter Benchmark Values as guidelines for
14  determining whether a facility discharging industrial storm water has implemented the
15  requisite BAT and BCT. 65 Fed. Reg. 64746, 64767 (Oct. 30, 2000). EPA has established
16  Parameter Benchmark Values for the following parameters, among others: total suspended
17  solids – 100 mg/L; iron – 1.0 mg/L; magnesium – 0.0636 mg/L; zinc – 0.117 mg/L;
18  aluminum – 0.75 mg/L; nitrate + nitrite nitrogen – 0.68 mg/L; and chemical oxygen demand
19  – 120 mg/L. The California State Water Resources Control Board has proposed a
20  Benchmark Value for electrical conductance of 200 μmhos/cm.

21      21.     In addition to absolute prohibitions, the General Permit contains a variety of
22  substantive and procedural requirements that dischargers must meet. Facilities discharging,
23  or having the potential to discharge, storm water associated with industrial activity that have
24  not obtained an individual NPDES permit must apply for coverage under the State's General
25  Permit by filing a Notice of Intent To Comply ("NOI"). The General Permit requires
26  existing dischargers to have filed their NOIs before March 30, 1992.

27      22.     Dischargers must develop and implement a Storm Water Pollution Prevention
28  Plan ("SWPPP"). The SWPPP must describe storm water control equipment and measures

COMPLAINT
                                                6

1   that comply with the BAT and BCT standards. The General Permit requires that an initial
2   SWPPP have been developed and implemented before October 1, 1992. The SWPPP must,
3   among other requirements, identify and evaluate sources of pollutants associated with
4   industrial activities that may affect the quality of storm and non-storm water discharges from
5   the facility and identify and implement site-specific best management practices ("BMPs") to
6   reduce or prevent pollutants associated with industrial activities in storm water and
7   authorized non-storm water discharges (Section A(2)). The SWPPP's BMPs must
8   implement BAT and BCT (Section B(3)). The SWPPP must include: a description of
9   individuals and their responsibilities for developing and implementing the SWPPP (Section
10  A(3)); a site map showing the facility boundaries, storm water drainage areas with flow
11  pattern and nearby water bodies, the location of the storm water collection, conveyance and
12  discharge system, structural control measures, impervious areas, areas of actual and potential
13  pollutant contact, and areas of industrial activity (Section A(4)); a list of significant materials
14  handled and stored at the site (Section A(5)); a description of potential pollutant sources
15  including industrial processes, material handling and storage areas, dust and particulate
16  generating activities, and a description of significant spills and leaks, a list of all non-storm
17  water discharges and their sources, and a description of locations where soil erosion may
18  occur (Section A(6)). The SWPPP must include an assessment of potential pollutant sources
19  at the Facility and a description of the BMPs to be implemented at the Facility that will
20  reduce or prevent pollutants in storm water discharges and authorized non-storm water
21  discharges, including structural BMPs where non-structural BMPs are not effective (Section
22  A(7), (8)). The SWPPP must be evaluated to ensure effectiveness and must be revised where
23  necessary (Section A(9),(10)).

24      23.     The General Permit requires that "Facility operators shall investigate the
25  facility to identify all non-storm water discharges and their sources. As part of this
26  investigation, all drains (inlets and outlets) shall be evaluated to identify whether they
27  connect to the storm drain system. All non-storm water discharges shall be described. This
28  shall include the source, quantity, frequency, and characteristics of the non-storm water

COMPLAINT

1   discharges and associated drainage area." Section A(6)(a)(v).

2       24.    The General Permit authorizes non-storm water discharges providing that the
3   non-storm water discharges are in compliance with Regional Board requirements; that the
4   non-storm water discharges are in compliance with local agency ordinances and/or
5   requirements; that BMPs are included in the SWPPP to (1) prevent or reduce the contact of
6   non-storm water discharges with significant materials or equipment and (2) minimize, to the
7   extent practicable, the flow or volume of non-storm water discharges; that the non-storm
8   water discharges do not contain significant quantities of pollutants; and that the monitoring
9   program includes quarterly visual observations of each non-storm water discharge and its
10   sources to ensure that BMPs are being implemented and are effective (D. Special
11   Conditions.). Section B(3) of the General Permit requires dischargers to conduct visual
12   observations of all drainage areas for the presence of non-storm water discharges, to observe
13   the non-storm water discharges, and maintain records of such observations.

14       25.    Section C(11)(d) of the General Permit's Standard Provisions requires
15   dischargers to report any noncompliance to the Regional Board. *See also* Section E(6).
16   Lastly, Section A(9) of the General Permit requires an annual evaluation of storm water
17   controls including the preparation of an evaluation report and implementation of any
18   additional measures in the SWPPP to respond to the monitoring results and other inspection
19   activities.

20       26.    The General Permit requires dischargers commencing industrial activities
21   before October 1, 1992 to develop and implement an adequate written monitoring and
22   reporting program no later than October 1, 1992. Existing facilities covered under the
23   General Permit had to implement all necessary revisions to their monitoring programs no
24   later than August 1, 1997.

25       27.    As part of their monitoring program, dischargers must identify all storm water
26   discharge locations that produce a significant storm water discharge, evaluate the
27   effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control
28   measures set out in the SWPPP are adequate and properly implemented. Dischargers must

COMPLAINT

8

1   conduct visual observations of these discharge locations for at least one storm per month
2   during the wet season (October through May) and record their findings in their Annual
3   Report. Dischargers must also collect and analyze storm water samples from at least two
4   storms per year. Section B(5)(a) of the General Permit requires that dischargers "shall
5   collect storm water samples during the first hour of discharge from (1) the first storm event
6   of the wet season, and (2) at least one other storm event in the wet season. All storm water
7   discharge locations shall be sampled." Section B(5)(c)(i)-(iii) requires dischargers to sample
8   and analyze during the wet season for basic parameters, such as pH, total suspended solids
9   ("TSS"), electrical conductance, and total organic content ("TOC") or oil and grease
10  ("O&G"), certain industry-specific parameters, and toxic chemicals and other pollutants
11  likely to be in the storm water discharged from the facility. Dischargers must also conduct
12  dry season visual observations to identify sources of non-storm water pollution.

13      28.    Section B(14) of the General Permit requires dischargers to submit an annual
14  report by July 1 of each year to the executive officer of the relevant Regional Board. The
15  annual report must be signed and certified by an appropriate corporate officer. Sections
16  B(14), C(9), (10). Section A(9)(d) of the General Permit requires the discharger to include
17  in their annual report an evaluation of their storm water controls, including certifying
18  compliance with the General Permit. *See also* Sections C(9) and (10) and B(14).

19      29.    Section 505(a)(1) and Section 505(f) of the Act provide for citizen
20  enforcement actions against any "person," including individuals, corporations, the United
21  States or any other governmental instrumentality or agency to the extent permitted by the
22  eleventh amendment to the Constitution for violations of NPDES permit requirements. 33
23  U.S.C. §§1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the Act is
24  authorized by 33 U.S.C. § 1365(a).

25      30.    The Regional Board has established water quality standards for the San
26  Francisco Bay in the Water Quality Control Plan for the San Francisco Bay Basin, generally
27  referred to as the Basin Plan.

28      31.    The Basin Plan includes a narrative toxicity standard which states that "[a]ll

COMPLAINT

9

1   waters shall be maintained free of toxic substances in concentrations that are lethal to or that

2   produce other detrimental responses in aquatic organisms."

3       32.    The Basin Plan provides that "[w]aters shall not contain suspended material in

4   concentrations that cause nuisance or adversely affect beneficial uses" and that "[w]aters

5   shall not contain biostimulatory substances in concentrations that promote aquatic growths to

6   the extent that such growths cause nuisance or adversely affect beneficial uses."

7       33.    The Basin Plan limits floating material, stating that "[w]aters shall not contain

8   floating material, including solids, liquids, foams, and scum, in concentrations that cause

9   nuisance or adversely affect beneficial uses."

10      34.    The Basin Plan dictates that "[w]aters shall be free of changes in turbidity that

11  cause nuisance or adversely affect beneficial uses."

12      35.    The Basin Plan provides that "[w]aters shall not contain oils, greases, waxes,

13  or other materials in concentrations that result in a visible film or coating on the surface of

14  the water or on objects in the water, that cause nuisance, or that otherwise adversely affect

15  beneficial uses."

16      36.    The Basin Plan establishes a Freshwater Water Quality Objective for zinc of

17  0.120 mg/L (4-day average and 1-hour average).

18      37.    The Basin Plan establishes Water Quality Objectives for Municipal Supply for

19  aluminum of 1.0 mg/L, iron of 0.3 mg/L, and zinc of 5.0 mg/L.

20      38.    EPA has established numeric water quality standards for priority toxic

21  pollutants, including criteria intended to protect aquatic life. For zinc, the standard is 0.120

22  mg/L (at a hardness of 100 mg/L). EPA has also established a numeric water quality

23  criterion for aluminum of 0.087 mg/L.

24  **V.    STATEMENT OF FACTS**

25      39.    Defendants Steven Chu and the Lawrence Berkeley National Laboratory

26  operate a federally funded research and development center, located at 1 Cyclotron Road in

27  Berkeley, California. The Facility is engaged in, *inter alia*, metal finishing, hazardous waste

28  treatment, gasoline dispensing, transportation, and car washing. The Facility or portions

COMPLAINT                                                                10

1    thereof, fall within the Standard Industrial Classification ("SIC") Codes 8733, 3499, 4214,
2    4953, 5541, 4789, and 7542. The Facility covers 203 acres, the majority of which is
3    unpaved. Plaintiffs allege that there are at least 80 buildings located on the property. On
4    information and belief, Plaintiffs allege that metal finishing, hazardous waste storage and
5    treatment, gasoline dispensing, transportation, and car washing is conducted outside of these
6    buildings.

7        40.    Defendants channel and collect storm water falling on the Facility through
8    various storm drains. The site-wide storm drain system discharges into the North Fork of
9    Strawberry Creek watershed on the north side of the Facility and into Strawberry Creek on
10    the south side. The North Fork of Strawberry Creek watershed is 170 acres comprised of
11    steep canyons and hillsides covered with brush, trees, and grass. The area contains, *inter*
12    *alia*, LBNL buildings, parking lots, paved areas and other improvements. The southerly and
13    easterly portions of the Facility discharge to Chicken Creek, Ten-Inch Creek, Ravine Creek,
14    and Cafeteria Creek, as well as to other tributaries, and then to the [South Fork of]
15    Strawberry Creek. The north and south forks of Strawberry Creek traverse the UC campus
16    and join at the western side of the campus near Oxford Street. These waters are then
17    directed into the City of Berkeley's Oxford and Center Streets culvert. The runoff flows
18    through the City of Berkeley's storm drainage system and empties into San Francisco Bay.

19        41.    Significant industrial activities at the site take place outside and are exposed to
20    rainfall. These activities include metal finishing and storage of metallic materials; the
21    storage, handling, and disposal of waste material, including hazardous waste and
22    radionuclides; various fabrication and construction activities; gasoline dispensing; car and
23    truck washing; outside storage or handling of equipment containing chemicals; outside
24    storage or handling of materials in aboveground storage tanks; and the storage and use of
25    vehicles and equipment for materials handling. Loading and delivery of materials occurs
26    outside. Trucks enter and exit the Facility directly from and to a public road. Plaintiffs
27    allege on information and belief that some of the exposed surfaces at the Facility where
28    industrial activities occur are unpaved and sediment and other materials are disturbed as a

COMPLAINT

**1**  result of the storage and disposal processes. These areas are exposed to storm water and

**2**  storm flows due to the lack of overhead coverage, berms and other storm water controls.

**3**      42.    Industrial machinery, heavy equipment and vehicles are operated and stored at

**4**  the Facility in areas exposed to storm water flows. Plaintiffs are informed and believe, and

**5**  thereupon allege, that such machinery and equipment leak contaminants such as oil, grease,

**6**  diesel fuel, anti-freeze and hydraulic fluids that are exposed to storm water flows.

**7**      43.    Groundwater drainage at the Facility flows through both pumped vertical and

**8**  free-flowing horizontal wells called hydraugers. Plaintiffs allege that discharge from the

**9**  majority of the hydraugers flows directly to the Facility's storm drain system.

**10**     44.    Plaintiffs are informed and believe, and thereupon allege that the storm water

**11**  flows easily over the surfaces of the Facility, collecting suspended sediment, dirt, oils,

**12**  grease, metals and other pollutants as it flows toward the storm water drains. Storm water

**13**  and any pollutants contained in that storm water entering the drains flows directly to

**14**  Strawberry Creek or its tributaries.

**15**     45.    The management practices at the Facility are wholly inadequate to prevent the

**16**  sources of contamination described above from causing the discharge of pollutants to waters

**17**  of the United States. The Facility lacks sufficient structural controls such as grading,

**18**  berming, roofing, containment, or drainage structures to prevent rainfall and storm water

**19**  flows from coming into contact with these and other exposed sources of contaminants. The

**20**  Facility lacks sufficient structural controls to prevent the discharge of water once

**21**  contaminated. The Facility lacks adequate storm water pollution treatment technologies to

**22**  treat storm water once contaminated.

**23**     46.    Since at least November 6, 2003, Defendants have taken samples or arranged

**24**  for samples to be taken of storm water discharges at the Facility. The sample results were

**25**  reported in the Facility's annual reports submitted to the Regional Board. Defendants

**26**  certified each of those annual reports pursuant to Sections A and C of the General Permit.

**27**     47.    Since at least November 6, 2003, the Facility has detected total suspended

**28**  solids, chemical oxygen demand, magnesium, nitrate + nitrite nitrogen, zinc, aluminum, iron,

COMPLAINT

1   and electrical conductance in the storm water monitoring they conducted for the Facility.

2   Plaintiffs notice letter listed out all reported instances of the Facility's monitoring of

3   representative storm water discharge samples. Levels of these pollutants detected in these

4   storm water samples by the Facility have been in excess of EPA's numeric parameter

5   benchmark values. Levels of these pollutants detected in storm water samples by the

6   Facility have been in excess of water quality standards established in the Basin Plan.

7   48. The levels of total suspended solids in storm water detected by the Facility

8   have exceeded the benchmark value for total suspended solids of 100 mg/L established by

9   EPA. For example, on October 5, 2006, the level of suspended solids measured by

10  Defendants in the Facility's storm water sample was 280 mg/L. That level of total

11  suspended solids is nearly three times the benchmark value for suspended solids established

12  by EPA.

13  49. The levels of chemical oxygen demand in storm water detected by the Facility

14  have exceeded the benchmark value for chemical oxygen demand of 120 mg/L established

15  by EPA. For example, on October 5, 2006, the level of chemical oxygen demand measured

16  by Defendants in the Facility's storm water sample was 500 mg/L. That level of chemical

17  oxygen demand is over four times the benchmark value for chemical oxygen demand

18  established by EPA.

19  50. The levels of magnesium in storm water detected by the Facility have

20  exceeded the benchmark value for magnesium of 0.0636 mg/L established by EPA. For

21  example, on February 7, 2007, the level of magnesium measured by Defendants in the

22  Facility's storm water sample was 33 mg/L. That level of magnesium is over 518 times the

23  benchmark value for magnesium established by EPA.

24  51. The levels of nitrate + nitrite nitrogen in storm water detected by the Facility

25  have exceeded the benchmark value for nitrate + nitrite nitrogen of 0.68 mg/L established by

26  EPA. For example, on October 5, 2006, the level of nitrate + nitrite nitrogen measured by

27  Defendants in the Facility's storm water sample was 17 mg/L. That level of nitrate + nitrite

28  nitrogen is 25 times the benchmark value for nitrate + nitrite nitrogen established by EPA.

COMPLAINT
13

1    52.    The levels of zinc in storm water detected by the Facility have exceeded the

2 benchmark value for zinc of 0.117 mg/L established by EPA. For example, on October 26,

3 2005, the level of zinc measured by Defendants in the Facility's storm water sample was

4 0.27 mg/L. That level of zinc is over twice the benchmark value for zinc established by

5 EPA.

6    53.    The levels of aluminum in storm water detected by the Facility have exceeded

7 the benchmark value for aluminum of 0.75 mg/L established by EPA. For example, on

8 October 5, 2006, the level of aluminum measured by Defendants in the Facility's storm

9 water sample was 3.2 mg/L. That level of aluminum is over four times the benchmark value

10 for aluminum established by EPA.

11    54.    The levels of iron detected in storm water by the Facility have exceeded the

12 benchmark value for iron of 1.0 mg/L established by EPA. For example, on October 5,

13 2006, the level of iron measured by Defendants in the Facility's storm water sample was 4.1

14 mg/L. That level of iron is over four times the benchmark value for iron established by

15 EPA.

16    55.    The electrical conductance levels detected in storm water by the Facility have

17 been greater than the numeric water quality standards applicable to electrical conductance in

18 California. The electrical conductance levels detected by the Facility in storm water have

19 been greater than the benchmark value of 200 μmho/cm proposed by the State Board. For

20 example, on October 5, 2006, the electrical conductance level measured by Defendants in the

21 Facility's storm water sample was 850 μmho/cm. That electrical conductance level is over

22 four times the State Board's proposed benchmark value.

23    56.    On information and belief, Plaintiffs allege that since at least November 6,

24 2003, Defendants have failed to implement BAT and BCT at the Facility for its discharges of

25 total suspended solids, chemical oxygen demand, magnesium, nitrate + nitrite nitrogen, zinc,

26 aluminum, iron, electrical conductance, and other pollutants. Section B(3) of the General

27 Permit requires that Defendants implement BAT for toxic and nonconventional pollutants

28 and BCT for conventional pollutants by no later than October 1, 1992. As of the date of this

COMPLAINT                                                    14

**1**   Complaint, Defendants have failed to implement BAT and BCT.

**2**       57.    On information and belief, Plaintiffs allege that since at least October 1, 1992,
**3** Defendants have failed to implement an adequate Storm Water Pollution Prevention Plan
**4** ("SWPPP") for the Facility. Plaintiffs are informed and believe, and thereupon allege, that the
**5** SWPPP prepared for the Facility does not set forth site-specific best management practices
**6** for the Facility that are consistent with BAT or BCT for the Facility. Plaintiffs are informed
**7** and believe, and thereupon allege, that the SWPPP prepared for the Facility does not include
**8** adequate structural pollutant control measures employed by the Defendants or an adequate
**9** description of best management practices to be implemented at the Facility to reduce
**10** pollutant discharges. According to information available to CSPA and SCSG, Defendants'
**11** SWPPP has not been evaluated to ensure effectiveness and revised where necessary to
**12** further reduce pollutant discharges. Plaintiffs are informed and believe, and thereupon allege,
**13** that the SWPPP does not include each of the mandatory elements required by Section A of
**14** the General Permit. Plaintiffs are informed and believe, and thereupon allege, that the
**15** SWPPP does not contain an accurate map that clearly delineates the boundaries of the
**16** Facility, the flow of storm water throughout the Facility, and the areas of soil erosion.
**17** Plaintiffs are informed an believe, and thereupon allege, that the SWPPP does not contain
**18** adequate BMPs to reduce or prevent pollutants associated with industrial activities in
**19** authorized non-storm water discharges, to prevent or reduce the contact of non-storm water
**20** discharges with significant materials or equipment, and to minimize, to the extent
**21** practicable, the flow or volume of non-storm water discharges.

**22**       58.    Information available to CSPA and SCSG indicates that as a result of these
**23** practices, storm water containing excessive pollutants is being discharged during rain events
**24** from the Facility directly to channels that flow into Strawberry Creek and its tributaries.
**25** Strawberry Creek flows directly to the San Francisco Bay.

**26**       59.    Strawberry Creek has been identified by the Regional Board, State Board and
**27** federal EPA as impaired by pesticides. The San Francisco Bay has been identified by the
**28** Regional Board, State Board and federal EPA as impaired for several pollutants, including

COMPLAINT

1    mercury and unknown toxicity.

2    60.    Plaintiffs are informed and believe, and thereupon allege, that pollutants

3    discharged by the Facility in its storm water are contributing to violations of water quality

4    standards that apply to Strawberry Creek and its tributaries and the San Francisco Bay.

5    Plaintiffs are informed and believe, and thereupon allege, that Defendants are discharging

6    total suspended solids, chemical oxygen demand, magnesium, nitrate + nitrite nitrogen, zinc,

7    aluminum, iron, electrical conductance and other un-monitored pollutants that are causing or

8    contributing to exceedances of applicable water quality standards in Strawberry Creek.

9    Defendants are contributing to violations of water quality standards including, but not

10    limited to, the narrative water quality standard for toxicity, turbidity, and heavy metals.

11    61.    Plaintiffs are informed and believe, and thereupon allege, that, Defendants have

12    failed and continue to fail to alter the Facility's SWPPP and site-specific BMPs consistent

13    with Section A(9) of the General Permit.

14    62.    Plaintiffs are informed and believe that Defendants failed to submit to the

15    Regional Board a true and complete annual report certifying compliance with the General

16    Permit since at least November 6, 2003.  Pursuant to Sections A(9)(d), B(14), and C(9), (10)

17    of the General Permit, Defendants must submit an annual report, that is signed and certified

18    by the appropriate corporate officer, outlining the Facility's storm water controls and

19    certifying compliance with the General Permit.  Plaintiffs are informed and believe, and

20    thereupon allege, that Defendants have signed incomplete annual reports that purported to

21    comply with the General Permit when there was significant noncompliance at the Facility.

22    63.    Information available to Plaintiffs indicates that Defendants have not fulfilled

23    the requirements set forth in the General Permit for discharges from the Facility due to the

24    continued discharge of polluted storm water.  Plaintiffs are informed and believe, and

25    thereupon allege, that all of the violations alleged in this Complaint are ongoing and

26    continuing.

27    ///

28    ///

COMPLAINT                                    16

**VI.   CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**Failure to Develop and Implement the Best Available and**
**Best Conventional Treatment Technologies**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

64.   Plaintiffs re-allege and incorporate Paragraphs 1-63, as if fully set forth herein.

65.   The General Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water and non-storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants. Defendants have failed to implement BAT and BCT at the Facility for its discharges of storm water, non-storm water and various pollutants including total suspended solids, chemical oxygen demand, magnesium, nitrate + nitrite nitrogen, zinc, aluminum, iron, electrical conductance and other un-monitored pollutants in violation of Effluent Limitation B(3) of the General Permit.

66.   Each day since October 1, 1992 that Defendants have failed to develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

67.   Defendants have been in violation of the BAT/BCT requirements every day since October 1, 1992. Defendants continue to be in violation of the BAT/BCT requirements each day that it fails to develop and fully implement BAT and BCT at the Facility.

**SECOND CAUSE OF ACTION**
**Failure to Prepare, Implement, Review, and Update**
**an Adequate Storm Water Pollution Prevention Plan**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

68.   Plaintiffs re-allege and incorporate Paragraphs 1-67, as if fully set forth herein.

69.   Section A and Provision E of the General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing an adequate SWPPP no later than October 1, 1992 and to conduct comprehensive compliance evaluations of the facility.

70.   Defendants have failed to develop and implement an adequate SWPPP for the Facility. Defendants' ongoing failure to develop and implement an adequate SWPPP for the

COMPLAINT

17

1  Facility is evidenced by, *inter alia*, Defendants' outdoor storage of various materials, without

2  appropriate best management practices; the continued exposure of significant quantities of

3  various materials to storm water flows; the continued exposure of waste resulting from the

4  operation or maintenance of vehicles at the site; the failure to either treat storm water prior to

5  discharge or to implement effective containment practices; the failure to include adequate

6  BMPs in the SWPPP to reduce or prevent pollutants associated with industrial activities in

7  authorized non-storm water discharges; the failure to include adequate BMPs or conduct the

8  requisite comprehensive site evaluation based on insufficient monitoring; and the continued

9  discharge of storm water pollutants from the Facility at levels in excess of EPA benchmark

10  values.

11      71.    Defendants have failed to update the Facility's SWPPP in response to the

12  analytical results of the Facility's storm water monitoring.

13      72.    Each day since October 1, 1992 that Defendants have failed to develop,

14  implement and update an adequate SWPPP for the Facility is a separate and distinct violation

15  of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

16      73.    Defendants have been in violation of the SWPPP requirements every day since

17  October 1, 1992. Defendants continue to be in violation of the SWPPP requirements each day

18  that it fails to develop and fully implement an adequate SWPPP for the Facility.

19                          **THIRD CAUSE OF ACTION**
20  **Failure to Develop and Implement an Adequate Monitoring and Reporting Program (Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

21      74.    Plaintiffs re-allege and incorporates Paragraphs 1-73, inclusive, as if fully set

22  forth herein.

23      75.    Section B of the General Permit requires dischargers of storm water associated

24  with industrial activity to have developed and be implementing a monitoring and reporting

25  program (including, *inter alia*, sampling and analysis of discharges) no later than October 1,

26  1992.

27      76.    Defendants have failed to develop and implement an adequate monitoring and

28  reporting program for the Facility.

COMPLAINT                                                18

1    77.    Each day since October 1, 1992 that Defendants have failed to develop and

2  implement an adequate monitoring and reporting program for the Facility in violation of the

3  General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. §

4  1311(a). The absence of requisite monitoring and analytical results are ongoing and

5  continuous violations of the Act.

6                            **FOURTH CAUSE OF ACTION**
                       **Discharges of Contaminated Storm Water**
7                   **in Violation of Permit Conditions and the Act**
                      **(Violations of 33 U.S.C. §§ 1311(a), 1342)**
8
       78.    Plaintiffs re-allege and incorporates Paragraphs 1-77, inclusive, as if fully set
9
   forth herein.
10
       79.    Discharge Prohibition A(2) of the General Permit requires that storm water
11
   discharges and authorized non-storm water discharges shall not cause or threaten to cause
12
   pollution, contamination, or nuisance. Receiving Water Limitations C(1) and C(2) of the
13
   General Permit require that storm water discharges and authorized non-storm water discharges
14
   shall not adversely impact human health or the environment, and shall not cause or contribute
15
   to a violation of any water quality standards contained in a Statewide Water Quality Control
16
   Plan or the applicable Regional Board's Basin Plan.
17
       80.    Plaintiffs are informed and believe, and thereupon allege, that since at least
18
   November 6, 2003, Defendants have been discharging polluted storm water from the Facility
19
   directly to channels that flow into Strawberry Creek, and then into the San Francisco Bay, in
20
   violation of the Discharge Prohibition A(2) of the General Permit.
21
       81.    During every rain event, rainwater flows freely over exposed materials, waste
22
   products, and other accumulated pollutants at the Facility, becoming contaminated with these
23
   pollutants. The rainwater then flows untreated from the Facility into channels that flow into
24
   Strawberry Creek and then into the San Francisco Bay.
25
       82.    Plaintiffs are informed and believe, and thereupon allege, that these discharges
26
   of contaminated storm water are causing pollution and contamination of the waters of the
27
   United States in violation of Discharge Prohibition A(2) of the General Permit.
28

COMPLAINT
                                        19

**1**   83.   Plaintiffs are informed and believe, and thereupon allege, that these discharges

**2**   of contaminated storm water are adversely affecting human health and the environment in

**3**   violation of Receiving Water Limitation C(1) of the General Permit.

**4**   84.   Plaintiffs are informed and believe, and thereupon allege, that these discharges

**5**   of contaminated storm water are contributing to the violation of the applicable water quality

**6**   standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's

**7**   Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit.

**8**   85.   Every day since at least November 6, 2003, that Defendants have discharged and

**9**   continues to discharge polluted storm water from the Facility in violation of the General Permit

**10**   is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These

**11**   violations are ongoing and continuous.

**12**

**FIFTH CAUSE OF ACTION**
**False Certification of Compliance In Annual Report**
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

**13**

**14**   86.   Plaintiffs re-allege and incorporate Paragraphs 1-85, as if fully set forth herein.

**15**   87.   Defendants have falsely certified compliance with the General Permit in each

**16**   of the annual reports submitted to the Regional Board since at least June 2003.

**17**   88.   Each day since at least June 5, 2003 that Defendants have falsely certified

**18**   compliance with the General Permit is a separate and distinct violation of the General Permit

**19**   and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Defendants continue to be in violation of

**20**   the General Permit's certification requirement each day that it maintains its false certification

**21**   of its compliance with the General Permit.

**22**   **VII.   RELIEF REQUESTED**

**23**   Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

**24**   a.   Declare Defendants to have violated and to be in violation of the Act as

**25**   alleged herein;

**26**   b.   Enjoin Defendants from discharging polluted storm water from the Facility

**27**   unless authorized by the Permit;

**28**   c.   Enjoin Defendants from further violating the substantive and procedural

COMPLAINT

1 | requirements of the Permit;

2 |    d. Order Defendants to immediately implement storm water pollution control

3 | and treatment technologies and measures that are equivalent to BAT or BCT and prevent

4 | pollutants in the Facility's storm water from contributing to violations of any water quality

5 | standards;

6 |    e. Order Defendants to comply with the Permit's monitoring and reporting

7 | requirements, including ordering supplemental monitoring;

8 |    f. Order Defendants to prepare a SWPPP consistent with the Permit's

9 | requirements, including a legally sufficient monitoring program, and implement procedures to

10 | regularly review and update the SWPPP;

11 |    g. Order Defendants to provide Plaintiff with reports documenting the quality

12 | and quantity of their discharges to waters of the United States and their efforts to comply with

13 | the Act and the Court's orders;

14 |    h. Order Defendants to take appropriate actions to restore the quality of waters

15 | impaired or adversely affected by their activities;

16 |    i. Award Plaintiffs' costs (including reasonable investigative, attorney, witness,

17 | compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

18 |    j. Award any such other and further relief as this Court may deem appropriate.

19 |

20 | Dated: April 14, 2008       Respectfully submitted,

21 |             LAW OFFICE OF MICHAEL R. LOZEAU

22 |             By:

23 |                Douglas J. Chermak
   |                Attorney for Plaintiff

24 |                CALIFORNIA SPORTFISHING PROTECTION
   |                ALLIANCE

25 |

26 |

27 |

28 |

COMPLAINT

# EXHIBIT A

# California Sportfishing Protection Alliance

*"An Advocate for Fisheries, Habitat and Water Quality"*
**3536 Rainier Avenue, Stockton, CA 95204**
Tel: 209-464-5067, Fax: 209-464-1028, E: deltakeep@aol.com

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

January 7, 2008

Benjamin Allen, UC Regent
408 Eshleman Hall
Mail Code 4500
Berkeley, CA  94720

Richard C. Blum, UC Regent
Office of the Secretary and Chief of Staff to
the Regents
1111 Franklin St., 12th Floor
Oakland, CA  94607

William De La Peña, UC Regent
Office of the Secretary and Chief of Staff to
the Regents
1111 Franklin St., 12th Floor
Oakland, CA  94607

Russell S. Gould, UC Regent
Office of the Secretary and Chief of Staff to
the Regents
1111 Franklin St., 12th Floor
Oakland, CA  94607

Judith L. Hopkinson, UC Regent
Office of the Secretary and Chief of Staff to
the Regents
1111 Franklin St., 12th Floor
Oakland, CA  94607

Eddie Island, UC Regent
1133 5th St., Suite 203
Santa Monica, CA  90403

Odessa P. Johnson, UC Regent
P.O. Box 580595
Modesto, CA  95358

Joanne Corday Kozberg, UC Regent
California Strategies, LLC
1875 Century Park East, Suite 1025
Los Angeles, CA  90067

Sherry L. Lansing, UC Regent
The Sherry Lansing Foundation
2121 Avenue of the Stars, Suite 2020
Century City, CA  90067

Monica C. Lozano, UC Regent
La Opinión
700 So. Flower St., Suite 3000
Los Angeles, CA  90017

George M. Marcus, UC Regent
Marcus & Millichap Co.
777 California Ave.
Palo Alto, CA  94304

John J. Moores, UC Regent
JMI Services Inc.
12265 El Camino Real
San Diego, CA  92130

Gerald L. Parsky, UC Regent
Aurora Capital Group
10877 Wilshire Blvd., #2100
Los Angeles, CA  90024-4376

LBNL
January 7, 2008
Page 2 of 16

Norman J. Pattiz, UC Regent
Westwood One
8965 Lindblade Street
Culver City, CA 90232

Peter Preuss, UC Regent
The Preuss Foundation, Inc.
2223 Avenida de la Playa #220
La Jolla, CA 92037

Frederick Ruiz, UC Regent
Ruiz Foods Inc.
P.O. Box 37
Dinuba, CA 93618

Leslie Tang Schilling, UC Regent
Office of the Secretary and Chief of Staff to
the Regents
1111 Franklin St., 12th Floor
Oakland, CA 94607

Bruce D. Varner, UC Regent
Varner & Brandt LLP
3750 University Ave., Suite 610
Riverside, CA 92501

Paul D. Wachter, UC Regent
Main Street Advisors
3110 Main St., Suite 300
Santa Monica, CA 90405

Arnold Schwarzenegger, Ex Officio Regent
President of the Board of Regents
Governor of California
State Capitol
Sacramento, CA 95814

Robert C. Dynes, Ex Officio Regent
UC President
1111 Franklin St., 12th Floor
Oakland, CA 94607-5200

John Garamendi, Ex Officio Regent
Lieutenant Governor of California
State Capitol, Rm. 1114
Sacramento, CA 95814

Fabian Nuñez, Ex Officio Regent
Speaker of the Assembly
State Capitol
Room 219
Sacramento, CA 95814

Jack O'Connell, Ex Officio Regent
State Superintendent of Public Instruction
1430 N Street, Suite 5602
Sacramento, CA 95814

Eleanor V. Brewer, Ex Officio Regent
President, Alumni Associations of UC
1111 Franklin St., 12th Floor
Oakland, CA 94607-5200

Philip J. Bugay, Ex Officio Regent
Vice President, Alumni Associations of UC
P.O. Box 22546
Santa Barbara, CA 93121

Steven Chu, Director
Patrick Thorson
Lawrence Berkeley National Laboratory
1 Cyclotron Road
Berkeley, CA 94720

Dr. Robert M. Gates
Secretary of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

Notice of Violations and Intent to File Suit

LBNL
January 7, 2008
Page 3 of 16

## Re:    Notice of Violations and Intent to File Suit Under the Federal Water Pollution Control Act

Dear Messrs. Chu and Thorson, Secretary Gates, and members of the Regents:

I am writing on behalf of the California Sportfishing Protection Alliance and the Strawberry Canyon Stewardship Group (collectively "CSPA") in regard to violations of the Clean Water Act ("Act") that CSPA believes are occurring at the Lawrence Berkeley National Lab located at 1 Cyclotron Road in Berkeley, California ("LBNL" or "Facility"). CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Sacramento-San Joaquin River Delta ("the Delta"), San Francisco Bay and other California waters. The Strawberry Canyon Stewardship Group is an association comprised of residents of Berkeley and nearby areas who use and enjoy Strawberry Creek and the San Francisco Bay. This letter is being sent to you as the responsible owners, officers, or operators of the LBNL (all recipients are hereinafter collectively referred to as "LBNL").

This letter addresses LBNL's unlawful discharge of pollutants from the Facility to waters of the United States. The Facility discharges storm water associated with its industrial activity directly to Strawberry Creek, which in turn flows through the City of Berkeley's storm drain system and then into the San Francisco Bay. The Facility is discharging storm water pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit No. CA S000001, State Water Resources Control Board ("State Board"), Order No. 92-12-DWQ as amended by Order No. 97-03-DWQ (hereinafter "General Permit"). The WDID identification number for the Facility listed on documents submitted to the State Board and California Regional Water Quality Control Board ("Regional Board") is 2-011002421. The Facility is violating the substantive and procedural requirements of the General Permit.

Section 505(b) of the Clean Water Act requires a citizen to give notice of intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act (33 U.S.C. § 1365(a)). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the State in which the violations occur.

As required by the Clean Water Act, this Notice of Violations and Intent to File Suit provides notice of the violations that have occurred, and continue to occur, at the Facility. Consequently, LBNL is hereby placed on formal notice by CSPA that, after the expiration of sixty days from the date of this Notice of Violations and Intent to Sue, CSPA intends to file suit in federal court against Director Steven Chu, LBNL, the individual Regents, and Secretary Gates under Section 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)), for violations of the Clean Water Act and the Order. These violations are described more extensively below.

## I.    Background.

On April 1, 1992, LBNL filed its Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI"). LBNL

Notice of Violations and Intent to File Suit

LBNL
January 7, 2008
Page 4 of 16

certified that the Facility is classified under SIC codes 8733 ("noncommercial research organizations), 3499 ("fabricated metal products"), and 4214 ("local trucking without storage"). According to the Facility's Storm Water Monitoring Program, it also conducts activities under SIC codes 4953 ("hazardous waste treatment and storage"), 5541 ("gasoline dispensing"), 4789 ("transportation"), and 7542 ("car washing"). According to LBNL's NOI, the Facility collects and discharges storm water from its 203-acre industrial site which flows into San Francisco Bay. The Facility discharges the storm water from three storm drain outlets.

The San Francisco Bay Regional Water Quality Control Board (the "Regional Board" or "Board") has established water quality standards for the San Francisco Bay in the "Water Quality Control Plan for the San Francisco Bay Basin," generally referred to as the Basin Plan. *See* http://www.swrcb.ca.gov/rwqcb2/basinplan.htm. The beneficial uses of the Bay region's waters include among others contact and non-contact recreation, endangered and threatened species habitat, shellfish harvesting, and fish spawning. The non-contact recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but not normally involving contact with water where water ingestion is reasonably possible. These uses include, but are not limited to, picnicking, sunbathing, hiking, . . ., camping, boating, . . ., sightseeing, or aesthetic enjoyment in conjunction with the above activities." Basin Plan at 2.1.16.

The Regional Board has established water quality standards for San Francisco Bay and its tributaries. The Basin Plan includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce significant alterations in population or community ecology or receiving water biota." *Id.* at 3.3.8. The Basin Plan establishes a dissolved oxygen standard of 5.0 mg/L for waters downstream from the Carquinez Bridge. *Id.* at 3.3.5. It limits floating material, stating that "[w]aters shall not contain floating material, including solids, liquids, foams, and scum, in concentrations that cause nuisance or adversely affect beneficial uses." *Id.* at 3.3.6. The Basin Plan establishes a Marine Water Quality Objective for zinc of .081 mg/L (4-day average) and .090 mg/L (1-hour average). *Id.* at Table 3-3. The Basin Plan establishes a Freshwater Water Quality Objective for zinc of 0.120 mg/L (4-day average and 1-hour average). *Id.* at Table 3-4.

The U.S. Environmental Protection Agency ("EPA") has published benchmark levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT"). The EPA has established the following benchmarks for pollutants discharged by LBNL: aluminum – 0.75 mg/L; magnesium – 0.0636 mg/L; zinc – 0.117 mg/L; chemical oxygen demand ("COD") – 120 mg/L; total suspended solids ("TSS") – 100 mg/L; iron – 1 mg/L; and nitrate + nitrite nitrogen ("N+N") – 0.68 mg/L. The State Board also has proposed adding a benchmark level to the General Permit for specific conductance (200 μmho/cm).

LBNL
January 7, 2008
Page 5 of 16

## II.    Alleged Violations of the NPDES Permit.

### A.    *Discharges in Violation of the Permit.*

LBNL has violated and continues to violate the terms and conditions of the General Permit. Section 402(p) of the Act prohibits the discharge of storm water associated with industrial activities, except as permitted under an NPDES permit (33 U.S.C. § 1342) such as the General Permit. The General Permit prohibits any discharges of storm water associated with industrial activities that have not been subjected to BAT or BCT. Effluent Limitation B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants. BAT and BCT include both nonstructural and structural measures. General Permit, Section A(8). Conventional pollutants are TSS, O&G, pH, biochemical oxygen demand ("BOD"), and fecal coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. *Id.*; 40 C.F.R. § 401.15.

In addition, Discharge Prohibition A(1) of the General Permit prohibits the discharge of materials other than storm water (defined as non-storm water discharges) that discharge either directly or indirectly to waters of the United States. Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination or nuisance.

Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impact human health or the environment. Receiving Water Limitation C(2) of the General Permit also prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

LBNL has discharged and continues to discharge storm water with unacceptable levels of TSS, COD, specific conductivity, N+N, iron, aluminum, magnesium, zinc and other pollutants in violation of the General Permit. LBNL's sampling and analysis results reported to the Regional Board confirm discharges of specific pollutants and materials other than storm water in violation of the Permit provisions listed above. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

The following discharges of pollutants from the Facility have violated Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) and are evidence of ongoing violations of Effluent Limitation B(3) of the General Industrial Storm Water Permit:

LBNL
January 7, 2008
Page 6 of 16

| Date | Parameter | Concentration | Benchmark | Outfall |
|------|-----------|---------------|-----------|---------|
| 2/7/2007 | Magnesium | 29 mg/L | 0.0636 mg/L | STW 2 |
| 2/7/2007 | Nitrate + Nitrite | 3.7 mg/L | 0.68 mg/L | STW 2 |
| 2/7/2007 | Specific Conductivity | 560 µmho/cm | 200 µmho/cm (proposed) | STW 2 |
| 2/7/2007 | Magnesium | 33 mg/L | 0.0636 mg/L | STW 4 |
| 2/7/2007 | Nitrate + Nitrite | 0.77 mg/L | 0.68 mg/L | STW 4 |
| 2/7/2007 | Specific Conductivity | 600 µmho/cm | 200 µmho/cm (proposed) | STW 4 |
| 2/7/2007 | Magnesium | 1.7 mg/L | 0.0636 mg/L | STW 5 |
| 2/7/2007 | Zinc | 0.13 mg/L | 0.117 mg/L | STW 5 |
| 2/7/2007 | Nitrate + Nitrite | 5 mg/L | 0.68 mg/L | STW 5 |
| 10/5/2006 | Aluminum | 3.2 mg/L | 0.75 mg/L | STW 4 |
| 10/5/2006 | Iron | 4.1 mg/L | 0.0636 mg/L | STW 4 |
| 10/5/2006 | Magnesium | 40 mg/L | 0.0636 mg/L | STW 4 |
| 10/5/2006 | Nitrate + Nitrite | 17 mg/L | 0.68 mg/L | STW 4 |
| 10/5/2006 | Chemical Oxygen Demand | 500 mg/L | 120 mg/L | STW 4 |
| 10/5/2006 | Specific Conductivity | 850 µmho/cm | 200 µmho/cm (proposed) | STW 4 |
| 10/5/2006 | Aluminum | 1.7 mg/L | 0.75 mg/L | STW 5 |
| 10/5/2006 | Iron | 2.3 mg/L | 1.0 mg/L | STW 5 |
| 10/5/2006 | Magnesium | 3.6 mg/L | 0.0636 mg/L | STW 5 |
| 10/5/2006 | Zinc | 0.18 mg/L | 0.117 mg/L | STW 5 |
| 10/5/2006 | Nitrate + Nitrite | 5.7 mg/L | 0.68 mg/L | STW 5 |
| 10/5/2006 | Total Suspended Solids | 280 mg/L | 100 mg/L | STW 5 |
| 10/4/2006 | Magnesium | 26 mg/L | 0.0636 mg/L | STW 2 |
| 10/4/2006 | Nitrate + Nitrite | 4 mg/L | 0.68 mg/L | STW 2 |
| 10/4/2006 | Specific Conductivity | 610 µmho/cm | 200 µmho/cm (proposed) | STW 2 |
| 11/4/2005 | Magnesium | 19 mg/L | 0.0636 mg/L | STW 2 |
| 11/4/2005 | Nitrate + Nitrite | 3.1 mg/L | 0.68 mg/L | STW 2 |
| 11/4/2005 | Specific Conductivity | 480 µmho/cm | 200 µmho/cm (proposed) | STW 2 |
| 11/4/2005 | Aluminum | 2.1 mg/L | 0.75 mg/L | STW 4 |
| 11/4/2005 | Iron | 2.7 mg/L | 1.0 mg/L | STW 4 |
| 11/4/2005 | Magnesium | 5 mg/L | 0.0636 mg/L | STW 4 |
| 11/4/2005 | Nitrate + Nitrite | 3.6 mg/L | 0.68 mg/L | STW 4 |
| 11/4/2005 | Total Suspended Solids | 170 mg/L | 100 mg/L | STW 4 |

LBNL
January 7, 2008
Page 7 of 16

| 11/4/2005 | Aluminum | 8.3 mg/L | 0.75 mg/L | STW 5 |
|---|---|---|---|---|
| 11/4/2005 | Iron | 12 mg/L | 1.0 mg/L | STW 5 |
| 11/4/2005 | Magnesium | 6.3 mg/L | 0.0636 mg/L | STW 5 |
| 11/4/2005 | Zinc | 0.15 mg/L | 0.117 mg/L | STW 5 |
| 11/4/2005 | Nitrate + Nitrite | 4.2 mg/L | 0.68 mg/L | STW 5 |
| 11/4/2005 | Chemical Oxygen Demand | 250 mg/L | 120 mg/L | STW 5 |
| 11/4/2005 | Total Suspended Solids | 290 mg/L | 100 mg/L | STW 5 |
| 10/26/2005 | Magnesium | 29 mg/L | 0.0636 mg/L | STW 2 |
| 10/26/2005 | Nitrate + Nitrite | 2 mg/L | 0.68 mg/L | STW 2 |
| 10/26/2005 | Specific Conductivity | 590 μmho/cm | 200 μmho/cm (proposed) | STW 2 |
| 10/26/2005 | Iron | 1.3 mg/L | 1.0 mg/L | STW 4 |
| 10/26/2005 | Magnesium | 5.4 mg/L | 0.0636 mg/L | STW 4 |
| 10/26/2005 | Zinc | 0.27 mg/L | 0.117 mg/L | STW 4 |
| 10/26/2005 | Nitrate + Nitrite | 3.7 mg/L | 0.68 mg/L | STW 4 |
| 10/26/2005 | Iron | 2.2 mg/L | 1.0 mg/L | STW 5 |
| 10/26/2005 | Magnesium | 3.3 mg/L | 0.0636 mg/L | STW 5 |
| 10/26/2005 | Nitrate + Nitrite | 3.2 mg/L | 0.68 mg/L | STW 5 |
| 2/26/2005 | Magnesium | 17 mg/L | 0.0636 mg/L | STW 2 |
| 2/26/2005 | Nitrate + Nitrite | 3.7 mg/L | 0.68 mg/L | STW 2 |
| 2/26/2005 | Specific Conductivity | 460 μmho/cm | 200 μmho/cm (proposed) | STW 2 |
| 2/26/2005 | Aluminum | 2.8 mg/L | 0.75 mg/L | STW 4 |
| 2/26/2005 | Iron | 2.9 mg/L | 1.0 mg/L | STW 4 |
| 2/26/2005 | Magnesium | 2.3 mg/L | 0.0636 mg/L | STW 4 |
| 2/26/2005 | Aluminum | 4.3 mg/L | 0.75 mg/L | STW 5 |
| 2/26/2005 | Iron | 4.7 mg/L | 1.0 mg/L | STW 5 |
| 2/26/2005 | Magnesium | 38 mg/L | 0.0636 mg/L | STW 5 |
| 2/26/2005 | Nitrate + Nitrite | 13 mg/L | 0.68 mg/L | STW 5 |
| 2/26/2005 | Specific Conductivity | 840 μmho/cm | 200 μmho/cm (proposed) | STW 5 |
| 2/25/2004 | Aluminum | 0.78 mg/L | 0.75 mg/L | STW 2 |
| 2/25/2004 | Magnesium | 13 mg/L | 0.0636 mg/L | STW 2 |
| 2/25/2004 | Nitrate + Nitrite | 0.63 mg/L | 0.68 mg/L | STW 2 |
| 2/25/2004 | Specific Conductivity | 324 μmho/cm | 200 μmho/cm (proposed) | STW 2 |
| 2/25/2004 | Aluminum | 12 mg/L | 0.75 mg/L | STW 4 |
| 2/25/2004 | Iron | 13 mg/L | 1.0 mg/L | STW 4 |
| 2/25/2004 | Magnesium | 6.8 mg/L | 0.0636 mg/L | STW 4 |
| 2/25/2004 | Total Suspended Solids | 420 mg/L | 100 mg/L | STW 4 |

Notice of Violations and Intent to File Suit

LBNL
January 7, 2008
Page 8 of 16

| 2/25/2004 | Aluminum | 4.5 mg/L | 0.75 mg/L | STW 5 |
|-----------|----------|----------|-----------|-------|
| 2/25/2004 | Iron | 4.9 mg/L | 1.0 mg/L | STW 5 |
| 2/25/2004 | Magnesium | 4.7 mg/L | 0.0636 mg/L | STW 5 |
| 11/6/2003 | Magnesium | 15 mg/L | 0.0636 mg/L | STW 2 |
| 11/6/2003 | Nitrate + Nitrite | 0.92 mg/L | 0.68 mg/L | STW 2 |
| 11/6/2003 | Specific Conductivity | 381 µmho/cm | 200 µmho/cm (proposed) | STW 2 |
| 11/6/2003 | Magnesium | 21 mg/L | 0.0636 mg/L | STW 4 |
| 11/6/2003 | Specific Conductivity | 530 µmho/cm | 200 µmho/cm (proposed) | STW 4 |
| 11/6/2003 | Aluminum | 21 mg/L | 0.75 mg/L | STW 5 |
| 11/6/2003 | Iron | 24 mg/L | 1.0 mg/L | STW 5 |
| 11/6/2003 | Magnesium | 9.1 mg/L | 0.0636 mg/L | STW 5 |
| 11/6/2003 | Total Suspended Solids | 450 mg/L | 100 mg/L | STW 5 |
| 2/12/2003 | Magnesium | 3.6 mg/L | 0.0636 mg/L | STW 2 |
| 2/12/2003 | Nitrate + Nitrite | 0.96 mg/L | 0.68 mg/L | STW 2 |
| 2/12/2003 | Magnesium | 4.9 mg/L | 0.0636 mg/L | STW 4 |
| 2/12/2003 | Aluminum | 1.2 mg/L | 0.75 mg/L | STW 5 |
| 2/12/2003 | Iron | 1.5 mg/L | 1.0 mg/L | STW 5 |
| 2/12/2003 | Magnesium | 4.1 mg/L | 0.0636 mg/L | STW 5 |
| 11/7/2002 | Iron | 1/1 mg/L | 1.0 mg/L | STW 2 |
| 11/7/2002 | Magnesium | 4.4 mg/L | 0.0636 mg/L | STW 2 |
| 11/7/2002 | Nitrate + Nitrite | 0.73 mg/L | 0.68 mg/L | STW 2 |
| 11/7/2002 | Aluminum | 3.2 mg/L | 0.75 mg/L | STW 4 |
| 11/7/2002 | Iron | 4.8 mg/L | 1.0 mg/L | STW 4 |
| 11/7/2002 | Magnesium | 15 mg/L | 0.0636 mg/L | STW 4 |
| 11/7/2002 | Zinc | 0.84 mg/L | 0.117 mg/L | STW 4 |
| 11/7/2002 | Nitrate + Nitrite | 3.3 mg/L | 0.68 mg/L | STW 4 |
| 11/7/2002 | Chemical Oxygen Demand | 365 mg/L | 120 mg/L | STW 4 |
| 11/7/2002 | Specific Conductivity | 411 µmho/cm | 200 µmho/cm (proposed) | STW 4 |
| 11/7/2002 | Total Suspended Solids | 150 mg/L | 100 mg/L | STW 4 |
| 11/7/2002 | Magnesium | 1.9 mg/L | 0.0636 mg/L | STW 5 |

CSPA's investigation, including its review of LBNL's analytical results documenting pollutant levels in the Facility's storm water discharges well in excess of EPA's benchmark values and the State Board's proposed benchmarks, indicates that LBNL has not implemented BAT and BCT at the Facility for its discharges of TSS, COD, specific conductivity, N+N, iron, aluminum, magnesium, zinc and other pollutants, in violation of Effluent Limitation B(3) of the General Permit. LBNL was required to have implemented BAT and BCT by no later than

LBNL
January 7, 2008
Page 9 of 16

October 1, 1992. Thus, LBNL is discharging polluted storm water associated with its industrial operations without having implemented BAT and BCT. In addition, the above numbers indicate that the facility is discharging polluted storm water in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Permit. CSPA alleges that LBNL has violated and continues to violate Effluent Limitation B(3) of the General Permit each and every day that the Facility fails to install the requisite BAT or BCT pollution controls. CSPA further alleges that LBNL has violated Effluent Limitation B(3) Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) on each of the dates identified above.

CSPA also alleges that violations have occurred and will occur on other rain dates, including during every significant rain event that has occurred since January 7, 2003, and that will occur at the Facility subsequent to the date of this Notice of Violations and Intent to File Suit. Attachment A, attached hereto, sets forth each of the specific rain dates on which CSPA alleges that LBNL has discharged storm water containing impermissible levels of TSS, COD, specific conductivity, N+N, iron, aluminum, magnesium, and zinc in violation of Effluent Limitation B(3), Discharge Prohibitions A(1) and A(2), and Receiving Water Limitations C(1) and C(2) of the General Permit.

These unlawful discharges from the Facility are ongoing. Each day that LBNL has failed to implement BAT and BCT constitutes a separate violation of the General Permit and the Act. Each discharge of storm water to each storm drain at or adjacent to the Facility containing any of these pollutants constitutes a separate violation of the General Permit and the Act. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, LBNL is subject to penalties for violations of the General Permit and the Act since January 7, 2003.

## *B.*     *Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.*

Section A(1) and Provision E(2) of the General Industrial Storm Water Permit require dischargers of storm water associated with industrial activity to develop, implement, and update an adequate storm water pollution prevention plan ("SWPPP") no later than October 1, 1992. Section A(1) and Provision E(2) requires dischargers who submitted an NOI pursuant to the General Permit to continue following their existing SWPPP and implement any necessary revisions to their SWPPP in a timely manner, but in any case, no later than August 1, 1997.

The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges (General Permit, Section A(2)). The SWPPP must include BMPs that achieve BAT and BCT (Effluent Limitation B(3)). The SWPPP must include: a description of individuals and their responsibilities for developing and implementing the SWPPP (General Permit, Section A(3)); a site map showing the facility boundaries, storm

Notice of Violations and Intent to File Suit

LBNL
January 7, 2008
Page 10 of 16

water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity (General Permit, Section A(4)); a list of significant materials handled and stored at the site (General Permit, Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur (General Permit, Section A(6)).

The SWPPP also must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (General Permit, Section A(7), (8)). The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary (General Permit, Section A(9),(10)).

CSPA's investigation of LBNL's Annual Reports and other storm water-related documents indicate that LBNL has been operating with an inadequately developed or implemented SWPPP in violation of the requirements set forth above. LBNL has failed to adequately evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary. LBNL has been in continuous violation of Section A and Provision E(2) of the General Permit every day since at least Janaury 7, 2003, and will continue to be in violation every day that LBNL fails to develop and implement an effective SWPPP. LBNL is subject to penalties for violations of the Order and the Act occurring since Janaury 7, 2003.

## C.    Failure to File True and Correct Annual Reports.

Section B(14) of the General Industrial Storm Water Permit requires dischargers to submit an Annual Report by July 1st of each year to the executive officer of the relevant Regional Board. The Annual Report must be signed and certified by an appropriate corporate officer. General Permit, Sections B(14), C(9), (10). Section A(9)(d) of the General Industrial Storm Water Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Industrial Storm Water Permit. *See also* General Permit, Sections C(9) and (10) and B(14).

For at least the last five years, LBNL and its agents, Regina Lackner and Ron Pauer, inaccurately certified in their Annual Reports that the facility was in compliance with the General Permit. Consequently, LBNL, Regina Lackner, and Ron Pauer have violated Sections A(9)(d), B(14) and C(9) & (10) of the General Industrial Storm Water Permit every time LBNL or its agent failed to submit a complete or correct report and every time LBNL or its agents falsely purported to comply with the Act.

Notice of Violations and Intent to File Suit

LBNL
January 7, 2008
Page 11 of 16

## IV. Persons Responsible for the Violations.

CSPA puts LBNL, Director Steven Chu, the individual Regents, and Secretary Gates on notice that they are the persons responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts Director Steven Chu, LBNL, the individual Regents, and Secretary Gates on notice that it intends to include those subsequently identified persons in this action.

## V. Name and Address of Noticing Party.

Our name, address and telephone number is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainier Avenue
Stockton, CA 95204
Tel. (209) 464-5067

Lesley Emmington Jones
Strawberry Canyon Stewardship Group
195 The Uplands
Berkeley, CA 94705
Tel. (510) 652-2255

## VI. Counsel.

CSPA has retained legal counsel to represent it in this matter. Please direct all communications to:

Michael R. Lozeau
Douglas J. Chermak
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, California 94501
Tel. (510) 749-9102
mrlozeau@lozeaulaw.com

Andrew L. Packard
Michael Lynes
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, California 94952
Tel. (707) 763-7227
andrew@packardlawoffices.com

## VII. Injunctive Relief

CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

LBNL
January 7, 2008
Page 12 of 16

     CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the Act against LBNL and its agents for future violations upon the expiration of the 60-day notice period. However, during the 60-day notice period, we would be willing to discuss effective remedies for the violations noted in this letter. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Bill Jennings, Executive Director
California Sportfishing Protection Alliance

cc:    Charles F. Robinson, General Counsel of the Regents
       Nancy M. Ware, General Counsel of the Lab
       Elizabeth Gunther, Office of the General Counsel

## SERVICE LIST

Stephen Johnson, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Dorothy Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Michael Mukasey, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Wayne Nastri, Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA 94105

Bruce H. Wolfe, Executive Officer II
San Francisco Bay Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612

## ATTACHMENT A
### Rain Dates, LBNL, Berkeley, CA

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| January | 09 | 2003 | | May | 08 | 2003 | | February | 02 | 2004 |
| January | 10 | 2003 | | September | 10 | 2003 | | February | 03 | 2004 |
| January | 12 | 2003 | | October | 31 | 2003 | | February | 06 | 2004 |
| January | 13 | 2003 | | November | 02 | 2003 | | February | 15 | 2004 |
| January | 14 | 2003 | | November | 03 | 2003 | | February | 16 | 2004 |
| January | 21 | 2003 | | November | 06 | 2003 | | February | 17 | 2004 |
| January | 22 | 2003 | | November | 07 | 2003 | | February | 18 | 2004 |
| January | 23 | 2003 | | November | 08 | 2003 | | February | 20 | 2004 |
| January | 24 | 2003 | | November | 14 | 2003 | | February | 21 | 2004 |
| February | 12 | 2003 | | November | 15 | 2003 | | February | 22 | 2004 |
| February | 13 | 2003 | | November | 16 | 2003 | | February | 24 | 2004 |
| February | 15 | 2003 | | November | 30 | 2003 | | February | 25 | 2004 |
| February | 16 | 2003 | | December | 01 | 2003 | | February | 26 | 2004 |
| February | 19 | 2003 | | December | 02 | 2003 | | February | 27 | 2004 |
| February | 25 | 2003 | | December | 04 | 2003 | | March | 02 | 2004 |
| February | 26 | 2003 | | December | 05 | 2003 | | March | 25 | 2004 |
| February | 26 | 2003 | | December | 06 | 2003 | | March | 27 | 2004 |
| March | 13 | 2003 | | December | 09 | 2003 | | April | 16 | 2004 |
| March | 14 | 2003 | | December | 10 | 2003 | | April | 18 | 2004 |
| March | 15 | 2003 | | December | 12 | 2003 | | April | 19 | 2004 |
| March | 16 | 2003 | | December | 13 | 2003 | | April | 20 | 2004 |
| March | 19 | 2003 | | December | 14 | 2003 | | April | 21 | 2004 |
| March | 22 | 2003 | | December | 19 | 2003 | | May | 28 | 2004 |
| March | 23 | 2003 | | December | 20 | 2003 | | July | 30 | 2004 |
| March | 26 | 2003 | | December | 21 | 2003 | | August | 02 | 2004 |
| April | 02 | 2003 | | December | 23 | 2003 | | September | 19 | 2004 |
| April | 03 | 2003 | | December | 24 | 2003 | | October | 17 | 2004 |
| April | 07 | 2003 | | December | 28 | 2003 | | October | 19 | 2004 |
| April | 12 | 2003 | | December | 29 | 2003 | | October | 20 | 2004 |
| April | 13 | 2003 | | December | 30 | 2003 | | October | 23 | 2004 |
| April | 16 | 2003 | | January | 01 | 2004 | | October | 24 | 2004 |
| April | 21 | 2003 | | January | 02 | 2004 | | October | 25 | 2004 |
| April | 22 | 2003 | | January | 06 | 2004 | | November | 03 | 2004 |
| April | 23 | 2003 | | January | 07 | 2004 | | November | 04 | 2004 |
| April | 24 | 2003 | | January | 08 | 2004 | | November | 09 | 2004 |
| April | 25 | 2003 | | January | 09 | 2004 | | November | 10 | 2004 |
| April | 27 | 2003 | | January | 14 | 2004 | | November | 11 | 2004 |
| April | 28 | 2003 | | January | 23 | 2004 | | November | 12 | 2004 |
| April | 29 | 2003 | | January | 24 | 2004 | | November | 27 | 2004 |
| May | 02 | 2003 | | January | 26 | 2004 | | December | 06 | 2004 |
| May | 03 | 2003 | | January | 27 | 2004 | | December | 07 | 2004 |
| May | 04 | 2003 | | January | 30 | 2004 | | December | 08 | 2004 |
| May | 06 | 2003 | | February | 01 | 2004 | | December | 10 | 2004 |

Notice of Violations and Intent to File Suit

ATTACHMENT A
Rain Dates, LBNL, Berkeley, CA

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| December | 26 | 2004 | March | 29 | 2005 | December | 31 | 2005 |
| December | 27 | 2004 | April | 03 | 2005 | January | 01 | 2006 |
| December | 28 | 2004 | April | 07 | 2005 | January | 02 | 2006 |
| December | 29 | 2004 | April | 08 | 2005 | January | 03 | 2006 |
| December | 30 | 2004 | April | 22 | 2005 | January | 04 | 2006 |
| December | 31 | 2004 | April | 27 | 2005 | January | 06 | 2006 |
| January | 01 | 2005 | April | 28 | 2005 | January | 07 | 2006 |
| January | 02 | 2005 | May | 04 | 2005 | January | 11 | 2006 |
| January | 05 | 2005 | May | 05 | 2005 | January | 13 | 2006 |
| January | 06 | 2005 | May | 08 | 2005 | January | 14 | 2006 |
| January | 07 | 2005 | May | 09 | 2005 | January | 17 | 2006 |
| January | 08 | 2005 | May | 18 | 2005 | January | 18 | 2006 |
| January | 09 | 2005 | May | 19 | 2005 | January | 21 | 2006 |
| January | 10 | 2005 | June | 08 | 2005 | January | 27 | 2006 |
| January | 11 | 2005 | June | 09 | 2005 | January | 28 | 2006 |
| January | 25 | 2005 | June | 16 | 2005 | January | 30 | 2006 |
| January | 26 | 2005 | June | 18 | 2005 | February | 01 | 2006 |
| January | 27 | 2005 | October | 14 | 2005 | February | 02 | 2006 |
| January | 28 | 2005 | October | 15 | 2005 | February | 03 | 2006 |
| February | 06 | 2005 | October | 26 | 2005 | February | 04 | 2006 |
| February | 07 | 2005 | October | 28 | 2005 | February | 17 | 2006 |
| February | 11 | 2005 | October | 29 | 2005 | February | 18 | 2006 |
| February | 14 | 2005 | November | 03 | 2005 | February | 26 | 2006 |
| February | 15 | 2005 | November | 04 | 2005 | February | 27 | 2006 |
| February | 16 | 2005 | November | 07 | 2005 | February | 28 | 2006 |
| February | 17 | 2005 | November | 08 | 2005 | March | 01 | 2006 |
| February | 18 | 2005 | November | 25 | 2005 | March | 02 | 2006 |
| February | 19 | 2005 | November | 28 | 2005 | March | 03 | 2006 |
| February | 20 | 2005 | November | 29 | 2005 | March | 05 | 2006 |
| February | 21 | 2005 | December | 01 | 2005 | March | 06 | 2006 |
| February | 26 | 2005 | December | 02 | 2005 | March | 07 | 2006 |
| February | 27 | 2005 | December | 07 | 2005 | March | 09 | 2006 |
| February | 28 | 2005 | December | 17 | 2005 | March | 10 | 2006 |
| March | 01 | 2005 | December | 18 | 2005 | March | 11 | 2006 |
| March | 02 | 2005 | December | 19 | 2005 | March | 12 | 2006 |
| March | 03 | 2005 | December | 20 | 2005 | March | 13 | 2006 |
| March | 04 | 2005 | December | 21 | 2005 | March | 14 | 2006 |
| March | 18 | 2005 | December | 22 | 2005 | March | 16 | 2006 |
| March | 19 | 2005 | December | 25 | 2005 | March | 17 | 2006 |
| March | 21 | 2005 | December | 26 | 2005 | March | 20 | 2006 |
| March | 22 | 2005 | December | 27 | 2005 | March | 21 | 2006 |
| March | 23 | 2005 | December | 28 | 2005 | March | 24 | 2006 |
| March | 27 | 2005 | December | 29 | 2005 | March | 25 | 2006 |
| March | 28 | 2005 | December | 30 | 2005 | March | 27 | 2006 |

Notice of Violations and Intent to File Suit

## ATTACHMENT A
### Rain Dates, LBNL, Berkeley, CA

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| March | 28 | 2006 | December | 12 | 2006 | April | 21 | 2007 |
| March | 29 | 2006 | December | 13 | 2006 | April | 22 | 2007 |
| March | 30 | 2006 | December | 14 | 2006 | May | 02 | 2007 |
| March | 31 | 2006 | December | 15 | 2006 | May | 03 | 2007 |
| April | 01 | 2006 | December | 21 | 2006 | May | 04 | 2007 |
| April | 02 | 2006 | December | 26 | 2006 | July | 18 | 2007 |
| April | 03 | 2006 | December | 27 | 2006 | September | 22 | 2007 |
| April | 04 | 2006 | January | 03 | 2007 | October | 09 | 2007 |
| April | 05 | 2006 | January | 04 | 2007 | October | 10 | 2007 |
| April | 07 | 2006 | January | 16 | 2007 | October | 12 | 2007 |
| April | 08 | 2006 | January | 17 | 2007 | October | 15 | 2007 |
| April | 09 | 2006 | January | 26 | 2007 | October | 16 | 2007 |
| April | 10 | 2006 | January | 27 | 2007 | October | 17 | 2007 |
| April | 11 | 2006 | January | 28 | 2007 | October | 19 | 2007 |
| April | 12 | 2006 | February | 07 | 2007 | November | 10 | 2007 |
| April | 13 | 2006 | February | 08 | 2007 | November | 11 | 2007 |
| April | 15 | 2006 | February | 09 | 2007 | December | 04 | 2007 |
| April | 16 | 2006 | February | 10 | 2007 | December | 06 | 2007 |
| May | 19 | 2006 | February | 11 | 2007 | December | 07 | 2007 |
| May | 21 | 2006 | February | 12 | 2007 | December | 16 | 2007 |
| May | 24 | 2006 | February | 22 | 2007 | December | 17 | 2007 |
| October | 04 | 2006 | February | 24 | 2007 | December | 18 | 2007 |
| October | 05 | 2006 | February | 25 | 2007 | December | 19 | 2007 |
| November | 02 | 2006 | February | 26 | 2007 | December | 20 | 2007 |
| November | 03 | 2006 | February | 27 | 2007 | December | 27 | 2007 |
| November | 08 | 2006 | March | 20 | 2007 | December | 28 | 2007 |
| November | 14 | 2006 | March | 21 | 2007 | December | 29 | 2007 |
| November | 16 | 2006 | March | 26 | 2007 | January | 03 | 2008 |
| November | 28 | 2006 | April | 07 | 2007 | January | 04 | 2008 |
| December | 08 | 2006 | April | 11 | 2007 | January | 05 | 2008 |
| December | 09 | 2006 | April | 14 | 2007 | January | 06 | 2008 |
| December | 10 | 2006 | April | 19 | 2007 | | | |
| December | 11 | 2006 | April | 20 | 2007 | | | |

JS 44 - CAND (Rev. 1/904)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| California Sportfishing Protection Alliance | Steven Chu; Lawrence Berkeley National Laboratory |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

San Joaquin County

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Michael E. Lozeau / Law Office of Michael R. Lozeau, 1516 Oak St., Ste. 216, Alameda CA 94501  (see attachment)

ATTORNEYS (IF KNOWN)

Margaret N. Rosegay / Pillsbury Winthrop Shaw Pittman LLP, 50 Fremont St., San Francisco CA 94105 (see attachment)

## II. BASIS OF JURISDICTION   (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question
  (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity
  (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF
(For diversity cases only)                AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN 'X' IN ONE BOX ONLY)

- ☑ Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure of | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury | Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of | Slander | ☐ 368 Asbestos Personal | ☐ 640 RR & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| Judgment | ☐ 330 Federal Employers | Injury Product Liability | ☐ 650 Airline Regs | ☐ 830 Patent | Corrupt Organizations |
| ☐ 151 Medicare Act | Liability | | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Satellite TV |
| Student Loans (Excl | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| Veterans) | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| ☐ 153 Recovery of Overpayment | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| of Veteran's Benefits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 160 Stockholders Suits | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt Reporting & | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | | Act |
| | | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☑ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl.Ret. Inc. Security | ☐ 870 Taxes (US Plaintiff or | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate | Act | Defendant | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence Habeas Corpus: | | ☐ 871 IRS - Third Party | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Determination Under |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/ disab - Empl | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer w/ disab - Other | ☐ 555 Prison Condition | | | Statutes |
| | | | | | ☐ 890 Other Statutory Actions |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

## VII. REQUESTED IN COMPLAINT:   ☐ CHECK IF THIS IS A CLASS ACTION     DEMAND $_____   CHECK YES only if demanded in complaint:
UNDER F.R.C.P. 23                                                                    JURY DEMAND: ☐ YES  ☑ NO

## VIII. RELATED CASE(S)     PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
IF ANY                      "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)        ☑ SAN FRANCISCO/OAKLAND        ☐ SAN JOSE

DATE   4/14/2008        SIGNATURE OF ATTORNEY OF RECORD
                        Douglas J. Chermak

**Attachment to Civil Cover Sheet**

c)    Plaintiffs:
       Other attorney: Douglas J. Chermak
       Telephone numbers: (510) 749-9102   (510) 749-9103 (fax)

       Defendants:
       Telephone numbers: (415) 983-1000   (415) 932-1200